UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOKIO MARINE SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> - against – <br><br> ALLIED WORLD ASSURANCE COMPANY (U.S.), INC. and RLI INSURANCE COMPANY, <br><br> Defendants. | CIVIL ACTION NO. <br><br> DECLARATORY JUDGMENT COMPLAINT <br><br> ECF CASE |

Plaintiff TOKIO MARINE SPECIALTY INSURANCE COMPANY ("Tokio"), by and through its attorneys, Marshall Conway & Bradley, P.C., as and for its declaratory judgment complaint against defendants ALLIED WORLD ASSURANCE COMPANY (U.S.), INC. ("Allied World") and RLI INSURANCE COMPANY ("RLI") alleges, upon knowledge with respect to itself and its own acts and upon information and belief as to all other matters, as follows:

1

**NATURE OF THE CASE**

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, in which Tokio seeks declaratory, monetary and ancillary relief against Defendants relating to insurance coverage for Morningside Heights Housing Corporation ("Morningside") and FirstService Residential New York, Inc. ("FirstService") regarding an underlying personal injury lawsuit captioned *Rodriguez v. Morningside Heights Housing Corp. and FirstService Residential New York Inc.*, Supreme Court of the State of New York, New York County, Index No. 157166/2017 (the "Underlying Suit"). A copy of the Summons and Complaint filed in the Underlying Suit is annexed hereto as **Exhibit A.**

2. Tokio seeks a declaratory judgment declaring, *inter alia*, that Allied World must defend and indemnify Morningside and FirstService in the Underlying Suit on a primary and non-contributory basis under a primary general liability insurance policy issued by Allied World to Team Electric (the "Allied World Primary Policy"); that Allied World must reimburse Tokio for defense attorneys' fees, costs and disbursements incurred by Tokio to date in defending Morningside and FirstService in the Underlying Suit; and that RLI must indemnify Morningside and FirstService under an excess general liability policy issued by RLI to Team Electric (the "RLI Excess Policy") in the event a judgment in the Underlying Suit exceeds the amount of coverage under the Allied World Primary Policy.

## PARTIES

3. Plaintiff Tokio is an insurance company authorized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at One Bala Plaza, Bala Cynwyd, Pennsylvania.

4. Defendant Allied World Assurance Company (U.S.), Inc. is an insurance company authorized and existing under the laws of the State of Delaware with its principal place of business in Boston, Massachusetts.

5. Defendant RLI Insurance Company is an insurance company organized and existing under the laws of the State of Delaware with its principal place of business in Peoria, Illinois.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §.1332(a)(1) because this action arises between citizens of different states and meets the jurisdictional requirement for the amount in controversy.

7. This Court has subject matter jurisdiction to hear this case pursuant to 28 U.S.C. §2201(a) to declare the rights and other legal relations of Tokio and the defendants, *i.e.*, Allied World and RLI.

8. The amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue in this District is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

### Contract Between Team Electric and Morningside

10. Team Electric, a contractor, and Morningside, owner of premises located at 100 LaSalle Street, New York, New York (the "Premises"), entered into a written, signed agreement under which Team Electric agreed to perform various work at the Premises (the "Team Electric/Morningside Agreement"). A copy of the Team Electric/Morningside Agreement is annexed hereto as **Exhibit B**.

11. Pursuant to the Team Electric/Morningside Agreement, Team Electric agreed to indemnify and hold harmless Morningside and FirstService, the property manager of the Premises, from claims made by any third- parties arising out of or resulting from the performance of Team Electric's work at the Premises during the period that Team Electric was at the subject Premises.

12. Pursuant to the Team Electric/Morningside Agreement, Team Electric agreed to procure, provide and maintain at its own expense both primary and excess insurance naming Morningside and FirstService as additional insureds on both policies on a primary basis. See **Exhibit B**, Article 21, paragraph 21.6 *et seq*.

13. The Team Electric/Morningside Agreement contains the following provisions, which state in relevant part:

21.6   Insurance and Indemnity; Costs and Fees

(a) Notwithstanding any provision herein or in the Contract Documents to the contrary . . . Contractor, at its own expense, shall carry the following insurance . . . during the entire period of this Contract and during the entire performance of the Work.

(i) Commercial General Liability or "CGL" Insurance on an occurrence basis having primary limits of at least $1,000,000 per occurrence with not less than a $2,000,000 aggregate per project limit for claims arising out of allegations of bodily injury, personal injury and for property damage … Additional Insured status shall be conveyed by endorsement in form and content acceptable to Owner. The policy shall not contain exclusions relating to gravity related injuries or injuries sustained by any employee of an insured or anyone. In addition to the aforementioned CGL requirements the Contractor must carry an Excess Liability or "Umbrella" policy, written on a follow-form basis with a single occurrence limit of not less than $5,000,000 per project. All persons specified or named as Additional Insureds (or its equivalent) in this Contract must be included as "Additional Insured" parties on both the CGL and Umbrella policies of insurance. The coverage afforded to the Additional Insureds shall be written on a primary basis, and shall not require or contemplate contribution by any other policy or policies obtained by, or available to, any Additional Insured; any other such coverage shall be excess over the coverage to be provided by the Contractor….

\*     \*     \*

(b) The Owner, the Architect, the Owner's Managing Agent, all other persons specified or named as such in this Contract, and if requested, the Owner's Management, shall be Additional Insureds on the above policies on a primary basis. Insurance shall be written with … Employment and independent contractor exclusions removed.

14. The Team Electric/Morningside Agreement was in full force and effect on November 13, 2015, which is the date of loss in the Underlying Suit.

5

15. Morningside and FirstService are each additional insureds under the Allied World Primary Policy with respect to the Underlying Suit.

16. Morningside and FirstService are each additional insureds under the RLI Excess Policy with respect to the Underlying Suit.

**Tokio Policy**

17. Tokio issued Policy Number PPK1414645 for the policy period November 1, 2015 to November 1, 2016 (the "Tokio Policy") to Morningside. A copy of the Tokio Policy is annexed as **Exhibit C**.

18. The Tokio Policy provides, subject to all insuring clauses, conditions, limitations and exclusions, Commercial General Liability coverage with a $1 million per occurrence limit and a $2 million general aggregate limit.

**Allied World Primary Policy**

19. Allied World issued policy number 5050-0318 to Team Electric, Inc., effective from April 1, 2015 to April 1, 2016 (the "Allied World Primary Policy").

20. The Allied World Primary Policy provides primary general liability coverage to Team Electric in the amount of $1 million each occurrence and a $2 million general aggregate limit. A copy of the Allied World Primary Policy is annexed as **Exhibit D**.

6

21. In pertinent part, the Commercial General Liability Coverage Part of the Allied World Primary Policy, as modified by the endorsement titled "New York Changes-Commercial General Liability Coverage Form", states as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.

\*   \*   \*

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory';
(2) The bodily injury" or "property damage" occurs during the policy period . . .

22. The Allied World Primary Policy contains an endorsement titled "Additional Insured-Owners, Lessees or Contractors- Scheduled Person or Organization" (the "Additional Insured Endorsement"), which provides as follows:

**ADDITIONAL INSURED-OWNERS, LESSEES OR CONTRACTORS-SCEDULED PERSON OR ORGANIZATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

   SCHEDULE

Name of Person or Organization: As required by written contract. If required by your written contract with the additional insured, this insurance shall be a primary /non-contributory basis. The inclusion of one or more Additional Insured under the terms of this endorsement does not increase our limits of liability. All other terms and conditions remain unchanged.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Section II- Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of your ongoing operations performed for that insured.

**B.** With respect to the insurance afforded to these additional insureds, the following exclusion is added:

   **2. Exclusions**

   This insurance does not apply to "bodily injury" or "property damage" occurring after:

   **(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

   **(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or

8

subcontractor engaged in performing operations for a principal as a part of the same project.

**RLI Excess Policy**

23. Upon information and belief, RLI issued commercial excess policy number RXL0806023 to Team Electric, Inc. effective from April 1, 2015 to April 1, 2016 (the "RLI Excess Policy"). The RLI Excess Policy provides excess commercial general liability coverage to Team Eclectic with a combined single limit of $9 million.

24. Upon information and belief, the RLI "Excess Policy states that "The word 'insured' means any person or organization qualifying as an insured person under the terms of the underlying insurance."

25. The Allied World Primary Policy is the underlying insurance of the RLI Excess Policy.

26. Upon information and belief, the RLI Excess Policy provides, in relevant part, as follows:

**I. INSURING AGREEMENT**

**A. Coverage**

Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's ultimate net loss if such loss results from an occurrence insured by underlying insurance. However,, the insurance afforded by this policy shall apply (a) only in excess of the underlying insurance; (b) only after the underlying insurance has been exhausted by payment of the limits of liability of such insurance;....

This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions and limitations of and shall follow the underlying insurance in all respects.  This includes changes by endorsement.

### The Accident and the Underling Suit

27. On November 13, 2015  (the date of loss), Patrick Rodriguez, an employee of Team Electric, was performing work within the course and scope of his employment with Team Electric at the Morningside Garage premises located at 100 LaSalle Street, New York, New York (the "Premises") pursuant to the Team Electric/Morningside Agreement.

28. Rodriguez alleges that he sustained injuries on November 13, 2015 at the Premises while performing work during the course and scope of his employment for Team Electric by tripping on a parking bumper.  It is alleged that he tripped on a "broken, dislodged and exposed rebar which was jutting out of parking lot barriers" while he was performing his work for Team Elect at the Premises.

29. Rodriguez filed the Underling Suit against Morningside and FirstService for damages regarding the injuries he allegedly sustained at the Premises on the date of loss.

30.  In the Underlying Suit, Rodriguez alleges that the accident and his injuries were caused by the negligence of Morningside and FirstService.

10

31. Morningside and FirstService filed a third-party complaint against Team Eclectic, alleging claims for common law contribution, common law indemnification, contractual indemnification, contribution and breach of contract.

32. Tokio assigned counsel to defend both Morningside and FirstService in the Underling Suit and is continuing to defend them in the Underlying Suit.

### Tokio's Tender and Responses of Allied World and RLI

33. In correspondence dated February 14, 2018, Tokio tendered the defense and indemnification of Morningside and FirstService in the underlying Suit to Allied World and RLI under the Allied World Primary Policy and the RLI Excess Policy. A copy of Tokio's February 14, 2018 letter is annexed as **Exhibit E**.

34. In correspondence dated April 6, 2018, Rockville Risk Management ("Rockville"), on behalf of Allied World, rejected Tokio's tender and refused to defend or indemnify Morningside and FirstService in the Underlying Suit. Allied World rejected the tender, *inter alia*, because plaintiff "was injured while walking near a broken curb stop in the parking garage. Team Electric was contracted to preform electrical work in the parking garage. The scope of work did not include any work having to do with curb stops." A copy of Rockville's April 6, 2018 correspondence is annexed as **Exhibit F**.

35. In correspondence dated March 26, 2018 and April 3, 2018, RLI rejected Tokio's tender and "reserved all rights" to disclaim coverage to Morningside and FirstService in the

11

Underlying Suit. Copies of the March 26, 2018 and April 3, 2018 correspondence are annexed as **Exhibits G and H**, respectively.

36. Allied World has refused to assume the defense of Morningside and FirstService in the Underlying Suit, refused to reimburse Tokio for the cost of defending Morningside and FirstService, and refused to indemnify Morningside and FirstService for Rodriquez's injuries.

37. An actual controversy exists between the parties as to their rights and obligations under the Allied World Primary Policy and under the RLI Excess Policy.

38. Circumstances exist that justify a determination by this Court, pursuant to 28 U.S.C. section 2201, of the rights and obligations of the parties under the Allied World Primary Policy and RLI Excess Policy, and that determination will be beneficial to both plaintiff and defendants.

39. Tokio has no adequate remedy at law.

**FIRST CAUSE OF ACTION
(AGAINST ALLIED WORLD)
DECLARATION OF DUTY TO DEFEND UNDER THE ALLIED WORLD
PRIMARY POLICY**

40. Tokio repeats, reiterates, and re-alleges the allegations of paragraphs 1 through 39 as if fully set forth herein.

41. There is an actual and present controversy between Tokio and Allied World concerning whether Allied World has an obligation to defend Morningside and FirstService as additional insureds under the Allied World Primary Policy in the Underlying Suit.

42. Allied World's rejection of the tender under its primary policy was wrongful because Morningside and FirstService each qualify as additional insureds pursuant to the Additional Insured Endorsement of the Allied World Primary Policy.

43. Allied World's rejection of the tender under its primary policy was wrongful because the agreement between Team Electric and Morningside is a written contract which required Team Electric to name Morningside and FirstService as additional insureds to the Allied World Primary Policy.

44. Allied World's rejection of the tender was wrongful because the alleged liability of both Morningside and FirstService in the Underlying Suit arose out of Team Electric's ongoing operations performed for Morningside and FirstService at the Premises.

45. Pursuant to the Additional Insured Endorsement of the Allied World Primary Policy coverage for Morningside and FirstService under the Allied World Primary Policy is on a primary and non-contributory basis.

46. By operation of the Additional Insured Endorsement of the Allied World Primary Policy, Morningside and FirstService are additional insureds under the Allied World Primary Policy.

47. Tokio is entitled to a declaration that Allied World must defend Morningside and FirstService in the Underlying Suit under the Allied World Primary Policy on a primary and non–contributory basis.

48. A judicial declaration of this issue is necessary and appropriate at this time to permit Tokio to determine Allied World's legal obligations to Morningside and FirstService.

**SECOND CAUSE OF ACTION
(AGAINST ALLIED WORLD)
DECLARATION OF DUTY TO REIMBURSE TOKIO FOR
MORNINGSIDE'S AND FIRSTSERVICE'S DEFENSE COSTS THROUGH
THE DATE OF THE DECLARATION OF RIGHTS IN THIS LAWSUIT**

49. Tokio repeats and re-alleges that allegations of paragraphs 1 through 48 as if fully set forth herein.

50. There is an actual and present controversy between Tokio and Allied World concerning whether Allied World has an obligation to reimburse Tokio for Morningside's and FirstService's defense costs to date.

51. Based upon the foregoing, Tokio is entitled to a declaration that Allied World must reimburse Tokio for Morningside's and FirstService's defense attorneys' fees, costs and disbursements in the Underlying Suit from the date of tender to the date of judgment in this declaratory judgment lawsuit on a primary non-contributory basis.

52. A judicial declaration of this issue is necessary and appropriate at this time to permit Tokio to determine Allied World's legal obligations to Morningside and FirstService.

### THIRD CAUSE OF ACTION
### (AGAINST ALLIED WORLD)
### DECLARATION OF DUTY TO PAY MORNINGSIDE'S AND FIRSTSERVICE'S DEFENSE COSTS FROM THE DATE OF THE DECLARATORY JUDGMENT IN THIS ACTION THROUGH THE FINAL RESOLUTION OF THE UNDERLYING SUIT

53. Tokio repeats and re-alleges the allegations of paragraphs 1 through 52 as if fully set forth herein.

54. There is an actual and present controversy between Tokio and Allied World concerning whether Allied World has an obligation to pay Morningside's and FirstService's defense attorneys' fees, costs and disbursements in the Underlying Suit until the final resolution of that lawsuit.

55. Based upon the foregoing, Tokio is entitled to a declaration that Allied World must pay Morningside's and FirstService's defense attorneys' fees, costs and disbursements in the Underlying Suit on a primary, non-contributory basis from the date of judgment in this action through the final resolution of the Underlying Suit.

56. A judicial declaration of this issue is necessary and appropriate at this time to permit Tokio to determine Allied World's legal obligations to Morningside and FirstService.

## FOURTH CAUSE OF ACTION
## (AGAINST ALLIED WORLD)
## DECLARATION OF DUTY TO INDEMNIFY UNDER THE ALLIED WORLD PRIMARY POLICY

57. Tokio repeats and re-alleges that allegations of paragraphs 1 through 56 as if fully set forth herein.

58. There is an actual and present controversy between Tokio and Allied World concerning whether Allied World has an obligation under the Allied World Primary Policy to indemnify Morningside and FirstService in the Underlying Suit

59. Pursuant to the Additional Insured Endorsement of the Allied World Primary Policy, Allied World must indemnify Morningside and FirstService in the Underlying Suit on a primary, non-contributory basis.

60. Based upon the foregoing, Tokio is entitled to a declaration that Allied World must indemnify Morningside and FirstService in the Underlying Suit under the Allied World Primary Policy on a primary and non-contributory basis.

61. A judicial declaration of this issue is necessary and appropriate at this time to permit Tokio to determine Allied World's legal obligations to Morningside and FirstService.

## FIFTH CAUSE OF ACTION
### (AGAINST RLI INSURANCE COMPANY)
### DECLARATION OF DUTY TO INDEMNIFY UNDER THE RLI EXCESS POLICY

62. Tokio repeats and re-alleges that allegations of paragraphs 1 through 61 as if fully set forth herein.

63  The RLI Excess Policy follows form to the Allied World Primary Policy.

64.  The RLI Excess Policy is subject to the Additional Insured Endorsement of the Allied World Primary Policy.

65.  Morningside and FirstService are each entitled to additional insured status under the RLI Excess Policy.

66.  In the event that a judgment against Morningside and/or FirstService in the Underlying Suit exceeds the coverage available under the Allied World Primary Policy, the RLI Excess Policy applies prior to the Tokio Primary Policy.

67.  There is an actual and present controversy between Tokio and RLI concerning whether RLI has an obligation under the RLI Excess Policy to indemnify Morningside and FirstService in the Underlying Suit for any judgment against Morningside and/or FirstService that exceeds the amount of coverage available under the Allied World Primary Policy.

68.  Based upon the foregoing, Tokio is entitled to a declaration that RLI must indemnify both Morningside and FirstService in the Underlying Suit under the RLI Excess Policy for any

judgment against Morningside and/or FirstService that exceeds the amount of coverage available under the Allied World Primary Policy.

69. Based upon the foregoing Tokio is entitled to a declaration setting forth the priority of coverage between the Tokio Primary Policy and the RLI Excess Policy for any judgment against Morningside and/or FirstService in the Underlying Suit that exceeds the amount of coverage available under the Allied World Primary Policy.

70. A judicial declaration of this issue is necessary and appropriate at this time to permit Tokio to determine RLI's legal obligations to Morningside and FirstService.

**WHEREFORE**, Plaintiff respectfully requests that this Court issue a declaratory judgment declaring the rights, duties, and obligations of the parties under the Allied World Primary Policy and the RLI Excess Policy with regard to the claims in the Underlying Suit, as follows:

a. On the First Cause of Action, a declaration that Allied World is obligated under the Allied World Primary Policy to defend Morningside and FirstService in the Underlying Suit on a primary, non-contributory basis;

b. On the Second Cause of Action, a judgment in favor of Tokio ordering Allied World to reimburse defense attorneys' fees, costs and disbursements that Tokio incurred in defending

Morningside and FirstService in the Underlying Suit from the date of tender to the date of the judgment;

 c. On the Third Cause of Action, a declaration that Allied World must pay all defense attorneys' fees, costs and disbursements for defending Morningside and FirstService in the Underlying Suit from the date of the declaration through the final resolution of the Underlying Suit;

 d. On the Fourth Cause of Action, a declaration that Allied World must indemnify Morningside and FirstService in the Underlying Suit under the Allied World Primary Policy on a primary, non-contributory basis;

 e. On the Fifth Cause of Action, a declaration that RLI must indemnify Morningside and FirstService under the RLI Excess Policy for any judgment in the Underlying Suit that exceeds the coverage available to Morningside and/or FirstService under the Allied World Primary Policy;

 f. On the Fifth Cause of Action, a declaration setting forth the priority of coverage between the Tokio Primary Policy and the RLI Excess Policy for any judgment against Morningside and/or FirstService in the Underlying Suit that exceeds the coverage available under the Allied World Primary Policy; and

 g. Granting Plaintiff such other and further relief as this Court may deem just, proper and equitable.

## **JURY DEMAND**

Philadelphia demands trial by jury of all issues so triable in this cause.

Dated: April 30, 2019
      New York, New York

*/s/ Christopher T. Bradley*
MARSHALL CONWAY & BRADLEY, P.C.
By: Christopher T. Bradley
    Stacey H. Snyder
45 Broadway, Suite 740
New York, New York 10006
(212) 619-4444

Attorneys for Plaintiff Tokio Marine Specialty Insurance Company